We are joined this morning by Judge Joe Flatt, who is present by speakerphone and participating in the decision of all of these cases. And I can tell you from yesterday's conference, a very active participant as well. First case up this morning is U.S. v. Deason, Ms. Webster. Ms. Webster Good morning, and may it please the court. I think the problems with this case are best reflected in the series of questions that are laid out in our reply brief at page 6. Those questions are, which pictures in our videos were presented to the grand jury? Were those the same pictures or videos that were presented to the trial or at trial? Which pictures in our videos did each juror have in mind while voting to convict Mr. Deason? And did each of those materials come from the same transfer? Do you have any evidence that they weren't the same pictures and videos presented to the grand jury? We don't know what pictures were presented to the grand jury. You don't know a lot about what goes on the grand jury, but that doesn't mean we presume error from it. Well, we can look at the indictment, and the indictment is, I think that sort of gets to the heart of the issue, which is that the indictment is not specific enough to tell us what was presented to the grand jury. Indictment often doesn't tell you that. So if the indictment were properly tailored, if it were, if it made, if it met the standards that were articulated in our brief. I thought your argument in the district court was that we don't know that the jury, the pettit jury, unanimously agreed on which photographs were obscene. That's one of our arguments, and I think that's, uh. No, no, don't use present tense. Okay. I thought what you argued in the district court, what you preserved was the unanimity of the pettit jury issue. Did you preserve the discrepancy between, uh, possible potential discrepancy between the grand jury and the pettit jury? So, um, Mr. Deason, when, uh, represented by trial counsel, initially filed a motion to quash the, uh, to quash the indictment, and then once the indictment was superseded, um, the trial counsel acknowledged that that motion was then moot, and the, and never, um, renewed the indictment. So you didn't preserve, didn't preserve it. So this issue will be preserved, or should be reviewed for plain error. And we can't possibly reverse it on plain error because the third requirement requires you to show a reasonable probability of a different result in the trial because of the alleged plain error, and you can't possibly show that because you've conceded with me in the opening questions and answers that we can't possibly know what was presented to the grand jury. So there's no reasonable probability of a different result burden discharged by you? I think that we can meet the standard, or the third, uh, the, affecting the substantial rights prong of the plain error analysis. Which we have conclusive, I'm sorry, in binding authority have interpreted. Supreme Court did it in Alondo. We did it in Rodriguez. We've done it in a host of cases since then, saying that the difference between harmless error, if an error is preserved, and plain error, if it is not, is the difference between the burden, and the burden requires on plain error that the defendant who is appealing show a reasonable probability of a different result but for the alleged error. You have agreed with me that we don't know, and therefore, you can't show a reasonable probability of a different result. I think that's not the only harm that we have, um, that's not the only harm that we can show, that there's a difference between what was presented to the grand jury and what the jury may have convicted him on. On the other harm, uh, is that the jury could have convicted him without being unanimous,  You, you, you, I understand that, but what I'm trying to tell you is, when you say the other harm, there was this harm, you haven't shown that it was harm. Because you have not shown it affected the defendant in any way, you've not shown that the grand jury wouldn't have indicted, for example. I think the harm is, um, if you look at the images, I don't think that all of the images and all of the, uh, that were sent were, could meet the definition of obscenity, and so, But if the grand jury thought they did. But we don't know if they thought that they did. And then because we don't know, you lose because you didn't object and give the district court an opportunity to find out. If the court is not going to agree with us on issue one, I think it delves directly into issue three, which is the failure to give a unanimity instruction at trial. So, and this court has held before that that constitutes plain error. And that was in, um, the Atkinson case. And that goes back to the Gibson case from the Fifth Circuit in 1977, I think. And so, these issues are all tied up together. And so, Atkinson was 98, wasn't it? I think so. Yeah. So the question then would be, if the Supreme Court or our court has held since then something that vitiates Atkinson. If not, then Atkinson's conclusion that it, or holding that it was plain error, covers all four prongs. I think so, Your Honor. And I don't think, I'm not aware of any precedent from this court sitting in en banc or any, any precedent from the Supreme Court saying that Atkinson was wrongly decided or indicating that Atkinson was wrongly decided. It doesn't have to indicate that. If, if a subsequent, a later en banc or Supreme Court decision holds squarely, that you've got to show that. For example, Rodriguez, en banc 2005. The third prong of the plain error test requires that an error have affected substantial rights, which almost always require the error must have affected the outcome of the district court proceedings. Now, what they held in Atkinson was making almost inevitable that there was less than unanimity because of the multiple, seems like it was schemes to defraud. Multiple schemes, it's either drug conspiracy or schemes to defraud. And they held in that case, in effect, that there's a reasonable probability of different result because the, the huge number of overt acts. And we don't know which ones the jury put together. The question then would be whether this is sufficiently distinguishable from that. See, I don't think, and I'm going, I promise I'm going to hush. But I don't think that Atkinson said that whenever you fail to give a unanimity instruction, it's always when you have multiple possibilities of conviction on a count, single count, and you don't give a unanimity instruction that tells them they've got to pick and choose within that count and agree on one within that count. It's plain, it's a substantial likelihood of a different result. I think that first Atkinson was based on the Fifth Circuit's decision in Gibson, which was where they were, it was having possession of, I think, of stolen cars. And there were six possible car thefts or possession of cars still charged in the same count. And the same issue was presented there. And I think that's pretty similar to what we have here. And the harm that we can show is what I was indicating earlier, which is if you look at each of the images, they don't necessarily reach or meet the definition of obscenity. And that's illustrated, in fact, by the seventh, by the Rule 29 litigation about count seven. The district court didn't even reach whether or not the one video was obscene within the definition of the statute, and then said, or within the definition from Miller, and said, setting that aside, we can look at the other two videos and assume that those, and agree that those met the obscenity definition. But that's the whole problem. We don't know which of the jurors were facing their decision on the video that the district court set aside. And so... Is there any issue on obscenity on the screenshots? Whether or not the screenshots constitute... I think that goes to, I think, maybe the third issue. I may have misspoke earlier. The third issue about whether or not, like what evidence is required to meet the definition of obscenity. And so in Miller, it talks about the whole idea of that the images or the videos, the material that is to be obscene has to be taken as a whole. And so when you just introduce the screenshots of those things, you can't show that taken as a whole, they're obscene. For example, if you had a video, so if, I mean, there are, I think, well-known works of art that involved nudity. There are movies that are deemed to have artistic value that have explicit sex scenes. And if you look only, if you were presented only with a screenshot of that scene, you may very well think, well, that may meet the definition of obscenity. But if you take it in context and you look at the entire movie, then it doesn't meet that definition. And so that's the problem with introducing the screenshots in here. We also think that Agent Ring's testimony as to the content of the video was also improper for the reasons raised in our brief. But I know my time is running out. So thank you. If you need a couple more minutes, I took up so much of your time. Why don't you take them now and we'll still give you your five-minute reply if you need them. I'm happy to defer to the government unless you have additional questions that you'd like me to address at this time. Thank you. Thank you. Ms. Feinberg. Yes, Your Honor. Good morning, and may it please the Court. I'd like to begin by talking about Atkinson, which the Chief Judge spent a fair amount of time talking about. In his reply brief, Mr. Deason relies heavily on this Court's decision in Atkinson, and by extension, the former Fifth Circuit's decision in Gibson. And to bolster the argument that the district courts' jury instructions were plainly erroneous. Deason's reliance on these cases is misplaced. Atkinson, for one, is factually and legally distinguishable. As a matter of fact, Atkinson dealt with a basic bank fraud case that arose out of allegedly false statements and misrepresentations that were made to procure loans. And over the course of the early stages of the prosecution, this Court described it as mutating into something quite different, where the government was attempting to charge a broad conspiracy involving wire, mail, and tax fraud, and the interstate transportation of money. The issue at Atkinson, as it related to Counts 2 and 3 of the indictment, which charged the defendants there with devising a scheme to commit bank fraud, is that they didn't actually charge the defendants with executing a scheme to commit bank fraud. And as the Court pointed out in Atkinson, there was an essential element of the offense missing. Now, Mr. Deason concedes that the indictment here charged him with all of the essential elements of the offenses. Yeah, but I thought the reasoning that you have to confront in Atkinson was we don't know which one of these alternatives the jury picked. And it would be almost impossible or overwhelmingly unlikely that they all picked the same one or worse to that effect. Well, the issue in Atkinson, Your Honor, and you're correct, is that there was a 115-page indictment that the District Court redacted the vast majority of prior to it going back with the jury. And by having all of those redactions, it was impossible to know what the jury was relying upon to find the underlying scheme to commit bank fraud. And I would point out also to Your Honor's earlier question about whether Atkinson has subsequently been cast into question. And I would point out that it has, both by this Court and the Supreme Court. Now, the case upon which Atkinson relied to say that a special unanimity instruction was plain error was the former Fifth Circuit's 1977 decision in United States v. Gibson, which a plurality of the Supreme Court has subsequently cast significant doubt on. And that case is Shad v. Arizona. It's a 1991 case. The citation is 501 U.S. 624, and the pin site is 635. In that case, the Supreme Court says, we are not persuaded that the Gibson approach really answers these questions relating to specifically the rule in Gibson that this Court applied in Atkinson. And this Court itself, while not in a non-bonk decision, has subsequently cast into doubt whether reliance upon Gibson is necessarily appropriate. And that case would be this Court's decision in United States v. I may mispronounce the appellant's name, Verbitskaya, V-E-R-B-I-T-S-K-A-Y-A. The citation there is 406, Fed Third, 1324. 1334 is the pin site, and it's a 2005 11th Circuit decision. And in that case, the Court, it was a panel decision, I will be quick to add. It wasn't a non-bonk. But they rejected the defendant's argument that the District Court somehow committed plain error, essentially the same argument that Mr. Deason is making here, by failing to instruct the jury's sua sponte that they needed to unanimously agree on what theory or theories they were relying upon for their verdict. And this Court further emphasized that the former Fifth Circuit's 1997 decision in Gibson has been discredited by the Supreme Court in the case we previously discussed, Shad v. Arizona. And as a result, the Court there found that Gibson and Atkinson were factually and legally indistinguishable. So to rely on Atkinson to say that this Court must find plain error on these facts is simply not mandated by the factual ways in which Atkinson is distinguishable, the statutes involved, the elements involved, the alleged issue with the charging instruments, and under the law, both as stated by the Supreme Court in Shad v. Arizona and this Court in United States v. Verapiscaya. So reliance upon Atkinson, I think, doesn't get Mr. Deason the results he wants. And I would also point out that what Mr. Deason was charged with was the attempted transfer of obscene matter to a minor. The offense of attempted transfer of obscene matter to a minor that's at issue turns on the act, the criminal act of the transfer. It doesn't turn on the number of images that Mr. Deason transferred to who he believed to be a 14-year-old girl. Yeah, but he asked to have transferred obscene matter. Yes. The jury didn't agree. One juror thought it was obscene, allegedly obscene matter, number one. The second juror thought, no, it wasn't, but it was two. The third juror, et cetera. That's not a valid conviction. That would be the case if there were any images that could not be looked at and the three-part Miller test couldn't be applied to. Now, of course, the Miller obscenity test requires it. Well, they could all be looked at and the test applied to it. Jurors disagree about how the test came out after applying it to them. But there is no evidence here, Your Honor, that the jury was not unanimous about every single image or every single video. I understand, and that's why I think it all turns on third prong of the plain error test and whether Atkinson is distinguishable, has been discredited or not. Well, I won't ask that. Go ahead. Fair enough. The Miller obscenity test, and I think the district court points this out very well in the order denying the Rule 29 motion, merely requires that the jury be able to look at the material taken as a whole. It doesn't require the jury to look at the material from beginning to end. And again, here I'm referencing the three videos involved, which Judge Branch asked about the 19 screenshots that were submitted to the jury. Essentially, what the Supreme Court has done as a functional matter is said, you need to look at enough. It's not fair to a defendant to look at an isolated excerpt where you might be depriving them of surrounding context that would give some evidence that it was indeed not obscene or doesn't appeal to the period interest. But here there is no more that the jury needed to look at that would have cast any doubt on their verdict. They saw all they needed to see. All that they needed to see was presented into evidence and it formed the basis for a valid jury verdict of guilty on all counts. I thought, I thought what he sent was discrete, to some extent was discrete and separate parts, not one movie. Well, he sent three videos. Now, I would point out that this sort of gets in the issue of units of prosecution. So he sent a total of 70 alleged images depicting obscene matter, three videos and 67 still photos. Yes. And it's worth pointing out. You're not arguing, though, that the jury has to look at all of those to convict on any counts. They need to look at all of the images that form the basis for the charge and conclude that that material as a whole was obscene. Yes. I'm sorry. Suppose he sent 12 pictures and a video in the same transmission. Mm hmm. The jury doesn't have to look at the 12 pictures and the video together, does it? It could convict him if he thought, well, the 12 images are kind of bad, but they're not under the Miller test obscene, but the video is when the video is viewed in its entirety. They could convict based on that, could they not? If they were unanimous, yes. But again, in that example, Your Honor, what they're doing is they're looking at everything, which is exactly what the government says is what happened here. They have looked at the images, in Your Honor's example, as well as the video. And while they might find... See, I don't think Miller requires that if you send four videos, the jury has to look at all four of them to determine that they're, whether collectively they're obscene or not. The jury could determine that video A is obscene, but B, C, and D are not and convict, could they not? Theoretically, they could. All right. Their argument is we don't know that they didn't do that. Therefore, we don't know that they unanimously agreed on the same one. Therefore, there's error. Right. And as Your Honor pointed out in discussions with opposing counsel, what this sort of rises and falls on and whether or not Mr. Deason can show an actual harm. So even if theoretically we can speculate as to what the jury may or may not have done in the jury room, there's no evidence that any of these issues were in fact tainting the jury's deliberations. Which means, which means if she had preserved her objection, you would lose. Depending on the record, if she had preserved her objection, the district court had been given an opportunity to explore this issue and potentially inquire further. You just simply said overruled, you would lose because the burden would then be on you to show the absence of harm. We would then have to prove harmlessness beyond a reasonable doubt. Yes, Your Honor. Because this would be a constitutional error. Yeah. So it's all into that, in my view. And Atkinson, whether that's distinguishable or whether it's been superseded by Alano, I can't remember the date of Alano. I think it was post-1998. Do you recall? Not offhand, the date of Alano. No, Your Honor. But at least Rodriguez was. And the question then is whether it overruled that implicitly. Sure, and I would— That's one of the questions. Right. And I think more to the point, the question is whether when we're looking at the plain error test in Atkinson, if Atkinson establishes precedent that's on point for this issue. And we, of course, would argue, as this Court has subsequently held, that it's not factually on point, that in fact it's distinguishable. So reliance upon Atkinson does not get Mr. Deason the result he seeks in this case because he cannot establish an error that is plain under on-point binding authority. And as this Court has said time and again, when talking about plain error review, that in order to—excuse me—establish plain error, an error is not plain unless it is contrary to explicit statutory provisions or on-point precedent in this Court or the Supreme Court. And because Atkinson is not squarely on point, and because the case upon which it relied has subsequently been called into question by the Supreme Court and this Court in more recent panel decisions, Atkinson's doesn't control here. If I may, I'd like to take a moment and talk about the videos that formed the basis of Count 7 themselves and whether or not the jury had enough information to determine that they were, in fact, obscene matter. I think, as the District Court thoughtfully and thoroughly explained in the Rule 29, in the order denying Mr. Deason's Rule 29 motion, the jury had all that they needed to see about these videos. The jury had both Agent Ring's testimony about what the videos displayed when Agent Ring viewed them all after being sent to him by Mr. Deason, they had the titles of the videos, which were certainly obscene, they had the fact that the videos were links to the website Pornhub, which traffics exclusively, almost exclusively to my knowledge, in obscene matter, and they had 19 still images of the videos themselves that showed the beginning, the middle, and the end. They also had Mr. Deason's contemporaneous descriptions of things that were transpiring in the videos with who he believed was a 14-year-old girl, which bears out that the government did not, in fact, take screenshots of the most salacious aspects of the video, but rather took a fair and representative depiction of the beginning and middle and end of each video. So to say that the jury didn't have enough information to determine whether, in fact, the three videos that form the basis for Count 7, qualified as obscene matter, is simply, it's simply beggar's belief. They had more than enough information, and as the District Court found, the evidence was sufficient, and therefore this Court should affirm the jury's verdict. If the Court has no further questions. We don't. Thank you. Ms. Webster, five minutes. To answer the Chief Judge's questions about Olano, that case was actually decided by the Supreme Court in 1993, so that predates Atkinson. I would also point the Court to a decision, I think the government just talked about the Supreme Court's decision in Shadby, Arizona, but in a later decision, the Supreme Court actually addressed a very similar issue to what we have here. That's Richardson v. United States. That's 526 U.S. 813. That's from 1999, and that was a continuing criminal enterprise statute, and the Supreme Court held that when you, that the government and the indictment must specifically allege the three prior incidents that would be, would constitute the continuing criminal enterprise. So I think that also helps establish the fact that this error that we have alleged on appeal constitutes plain error. I think the Court was asking some questions about if the jury had to look at all four or all three videos and determine whether they collectively meet the obscenity statute, but here, almost all of the images with certain, were sent separately. So there was one email with one link to one video, one email with one picture, and so on. There were some emails, I think, that did contain multiple images, and so the jury had to be unanimous about which of those transfers, and therefore, which of those images constituted obscene material. The government has also indicated there were factual distinguishments that Atkinson does not control because the facts were different, the statute charge were different, but Atkinson itself held that it was plain error based on Gibson when those two cases involved drastically different things. So I think the same principle can be applied here. I think those are all my points on rebuttal, unless the Court has additional questions. Thank you, Ms. Webster. Thank you. Next case up is Nesbitt v. Candler County, Georgia. Thank you.